## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

JUAN C. SERRANO,

     Plaintiff,

v.                           Case No.  5:23-cv-109-TKW-MJF

CAPTAIN HEFFNER, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Juan C. Serrano, proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint under 42 U.S.C. § 1983. Doc. 7. Defendants move to dismiss the complaint on various grounds, including qualified immunity and failure to exhaust administrative remedies. Doc. 28. Serrano opposes the motion. Docs. 32, 33. The undersigned recommends that Defendants' motion to dismiss be granted.

### I.  ALLEGATIONS OF SERRANO'S AMENDED COMPLAINT

Serrano is an inmate of the Florida Department of Corrections currently housed at the Charlotte Correctional Institution. Doc. 7 at 2 in

ECF.[1] Serrano is suing five prison officials—in their individual capacities—at the Apalachee Correctional Institution: Captain Heffner, Officer Simpson, Officer Dickens, Officer Peters and Assistant Warden Santiago. *Id*. at 2-4. Serrano brings a variety of claims under § 1983 based on the following allegations.

On July 28, 2022, Serrano was housed in the "confinement unit" of "Q Dorm" at Apalachee CI. Doc. 7 at 6 ¶ 1. Serrano declared a mental health emergency. *Id*. Officers Dickens and Simpson handcuffed Serrano and escorted him to the medical department for placement in "S.H.O.S." (Self Harm Observation Status). *Id*. ¶¶ 2, 10. Officer Peters was the officer in charge of the medical area. Peters had not been informed of the "situation," so Dickens contacted Captain Heffner. *Id*. ¶¶ 3-4.

When Heffner arrived, he became "belligerent" with Serrano, told Serrano that he "wish[ed] [Serrano] to die," and "got in [Serrano's] face." *Id*. ¶¶ 5-6. Serrano goaded Heffner: "[W]hat you got going on it looks like you trying to kiss me." Doc. 7 at ¶ 6. Heffner responded, "O[h] you think

_____

[1] Citations to page numbers of Serrano's amended complaint are to the numbers assigned by the District Court's Electronic Case Filing ("ECF") system.

I won't kiss you." *Id.* at 7 ¶ 7. Simpson grabbed Serrano's arm, moved him backward against the wall, and held Serrano by the arm. *Id.* ¶¶ 8-9. Heffner kissed Serrano on the mouth. *Id.* Dickens and Peters witnessed the incident. *Id.* ¶ 11.

Serrano began to cry and said he would report the incident. *Id.* ¶ 12. Heffner responded that "his officer did not see nothing," *id.*, and: "[N]ow I'm gonna lick your face." Doc. 7 at 8 ¶ 13. Peters grabbed Heffner and said: "[T]hat's eno[ugh] you out of control man you already kiss him com[e] on." *Id.* ¶ 13. Serrano was placed in a holding cell in the medical department. *Id.* ¶ 14.

The following day during a counseling session with a psychiatrist, Serrano reported Heffner's conduct. *Id.* ¶ 17. The psychiatrist advised Serrano to report the incident. *Id.* Serrano filed a complaint pursuant to the Prison Rape Elimination Act, 34 U.S.C. §§ 30301, *et seq.* Doc. 7 at 8 ¶ 18. Assistant Warden Santiago was in charge of processing Serrano's complaint. *Id.* On August 3, 2022, Santiago placed Serrano in "Y Dorm" under "AV/AC" status pending investigation. *Id.*

On August 30, 2022, Santiago released Serrano to open population knowing that Serrano "was pending Close Management." *Id.* ¶ 20. Close

Management is "the separation of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, when the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code r. 33-601.800. Serrano alleges that the release "put my [Serrano's] safety at risk" because Heffner "was the O.I.C." *Id*. Serrano was transferred to Charlotte CI in October 2022. *Id*. ¶ 21.

Based on the foregoing allegations, Serrano claims that: (1) Heffner violated the Eighth Amendment by sexually and/or physically assaulting Serrano; (2) Simpson violated the Eighth Amendment by holding Serrano's arm against the wall; (3) Dickens and Peters violated the Eighth Amendment by failing to intervene in Heffner's assault; and (4) Santiago violated the Eighth Amendment by later releasing Serrano from "AV/AC" to general population. *Id*. at 9-10. As relief, Serrano seeks $500,000. *Id*. at 9.

## II. DEFENDANTS' MOTION TO DISMISS AND SERRANO'S RESPONSES

Defendants move to dismiss Serrano's complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 28. Defendants assert that (1)

Serrano failed to exhaust his administrative remedies for the claims against Simpson, Peters, Dickens and Santiago, as required by 42 U.S.C. § 1997e(a); (2) Serrano's allegations fail to state a claim for violation of the Eighth Amendment against Simpson, Peters, Dickens and Santiago; (3) Serrano's claim for compensatory damages is barred by 42 U.S.C. § 1997e(e); (4) Serrano's claim for punitive damages is barred by 18 U.S.C. § 3626(a)(1)(A); and (5) all Defendants are entitled to qualified immunity. Doc. 28 at 4-33.

Serrano responds that (1) he exhausted his administrative remedies as demonstrated by the grievances attached to Defendants' motion to dismiss; (2) his amended complaint states a plausible Eighth-Amendment claim against the Defendants; and (3) Defendants are not entitled to qualified immunity. Docs. 32, 33.

### III.   DISCUSSION

### A.   <u>Claims Against Heffner, Simpson, Dickens and Peters</u>

Defendants move to dismiss Serrano's Eighth-Amendment claims against them based on qualified immunity. Doc. 28 at 28-32. In response, Serrano asserts that *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) clearly

established that each Defendant's conduct violated the Eighth Amendment. Doc. 32 at 3.

### 1.  *Qualified Immunity Standard*

Qualified immunity provides "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002). To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019). At that point, the burden shifts to the plaintiff to prove that the defendant violated a constitutional right that was clearly established at the time of the alleged violation. *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009).

Given that the prison officials here were performing discretionary duties, Serrano must show (1) that the officials violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019). "For a right to be clearly established, the plaintiff may either

identify precedents with materially similar facts or show that the violation was so obvious that every reasonable officer would know that his actions were unconstitutional." *Washington v. Warden*, 847 F. App'x 734, 737 (11th Cir. 2021). Then existing law must have placed the constitutionality of the defendant's conduct beyond debate. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

### 2.   *Heffner is Entitled to Qualified Immunity*

Throughout Serrano's amended complaint and response to Defendants' motion to dismiss, Serrano alternatively characterizes Heffner's kiss as a "sexual assault"—*see* Doc. 7 at 7 ¶¶ 8, 11; *Id*. at 10 ¶¶ 2, 3; Doc. 33 at 2—and as a "physical assault . . . without need or provocation" and a "malicious[ ] and sadistic[ ] assault." Doc. 7 at 9. Heffner asserts that no case from the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court clearly established in July 2022, that kissing Serrano in response to Serrano's defiant and disrespectful statement violated the Eighth Amendment.

### (a).   Lack of Clear Establishment

Serrano claims that Heffner's conduct was a sexual assault that necessarily violated the Eighth Amendment. Doc. 7 ¶¶ 8, 11; Doc. 33 at

2. Heffner responds that he is entitled to qualified immunity because "[t]here is not a 'controlling or robust consensus of cases' demonstrating the unlawfulness of [his] alleged actions in this matter. Nor is there an 'obvious case' which would demonstrate such a precedent. Doc. 28 at 32 (quoting *Wesby*, 583 U.S. at 63, 65).

A court may begin the qualified immunity inquiry with either the constitutional question or the question of whether the violation was clearly established. The Supreme Court, however, has admonished courts to "think hard, and then think again" before addressing the merits of the constitutional claim. *See Wesby*, 583 U.S. at 62 n.7 (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)). Here, the qualified immunity analysis begins—and ends—with the issue of whether the alleged constitutional violation was contrary to clearly established law.

To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This is because officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases, and an

official's awareness of the existence of an abstract right does not equate to knowledge that <u>his</u> conduct infringes the right." *Corbitt*, 929 F.3d at 1311-12 (internal quotation marks and citation omitted).

"This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "[T]he salient question is whether the state of the law gave the defendant[ ] fair warning that [his] alleged conduct was unconstitutional." *Corbitt*, 929 F.3d at 1312 (internal quotation marks and citation omitted).

There are three independent ways that "a plaintiff can show that the state of the law gives officials fair warning of a clearly established right." *Corbitt* at 1312. First, the plaintiff could "show that a materially similar case has already been decided." *Id*. at 1312 (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)). "This category consists of cases where judicial precedents are tied to particularized facts." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012).

Second, the plaintiff could "show that a broader, clearly established principle should control the novel facts" of a particular situation.

*Mercado*, 407 F.3d at 1159. "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wesby*, 583 U.S. at 63 (internal quotation marks and citation omitted). "This requires a high degree of specificity." *Id*. at 63 (internal quotation marks and citation omitted). "A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established." *Id*. at 64 (internal quotation marks and citation omitted).

Third, the plaintiff could show that his case "fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1159; *see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (noting in a case where the Eighth-Amendment violation was "obvious," that there need not be a materially similar case for the right to be clearly established); *see also Wesby*, 583 U.S. at 64 ("Of course, there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

Serrano has not shown that the state of the law in July 2022 gave Heffner fair warning that his conduct violated Serrano's Eighth-Amendment right against sexual assault. In *DeJesus v. Lewis*, 14 F.4th 1182 (11th Cir. 2021), the Eleventh Circuit held that a prison official's sexual assault of a prisoner "necessarily violates the Eighth Amendment." *Id.* at 1196. The court defined "sexual assault" as "when the prison official, acting under color of law and without legitimate penological justification, engages in a sexual act with the prisoner, and that act was for the official's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner. See 18 U.S.C. § 2246(2)." *DeJesus*, 14 F.4th at 1196 (footnote omitted).

The court defined "sexual act" as follows: "At a minimum, those sexual acts include intentional sexualized touching underneath clothing, such as fondling or penetration; coerced sexual activity; combinations of ongoing harassment and abuse; and exchanges of sexual activity for special treatment or to avoid discipline." *DeJesus*, 14 F.4th at 1196 (footnotes omitted) (citing *Sconiers v. Lockhart*, 946 F.3d 1256, 1266 (11th Cir. 2020) (prison official's forceful digital penetration of prisoner's

anus clearly met the objective and subjective components of an Eighth Amendment claim)); *see also* 18 U.S.C. § 2246(2).[2]

For conduct that does *not* satisfy the foregoing definition of "sexual assault," a contextual, fact-specific analysis is applied to determine whether the conduct qualifies as sexual assault. *DeJesus*, 14 F.4th at 1196 n.12; *Id.* at 1197 & n.15. In other words, whether the conduct qualifies as a sexual assault for Eighth-Amendment purposes "depends on the facts of a given situation." *Id.* at 1197.

---

[2] Section 2246(2), defines "sexual act" as:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246(2)(A)-(D).

Taking Serrano's allegations as true, not every reasonable officer would have known that kissing Serrano violated Serrano's Eighth-Amendment right against "sexual assault." The conduct did not fall within the *DeJesus* definition, nor was it obvious—given the context and facts of the unique situation—that the conduct was a sexual assault for Eighth-Amendment purposes. Heffner, therefore, is entitled to qualified immunity on this aspect of Serrano's claim.

### (b). <u>Lack of Clear Establishment Regarding Excessive Force</u>

Serrano alternatively claims that Heffner's kissing him was excessive force under the Eighth Amendment because Heffner's conduct was "without need or provocation." Doc. 7 at 9. Again, the qualified immunity analysis begins—and ends—with the issue of whether the law clearly established that Heffner's conduct constituted excessive force under the Eighth Amendment.

Serrano's specific factual allegations establish that Heffner's conduct was provoked by Serrano's remark. Serrano admits that in response to Heffner yelling and "get[ting] in [Serrano's] face," Serrano said to Heffner, "what you got going on it looks like you trying to kiss

me." Doc. 7 at 6 ¶ 6. That insolent remark prompted Heffner to punish Serrano immediately by kissing him. *See Insolent*, AMERICAN HERITAGE DICTIONARY, https://ahdictionary.com/word/search.html?q=insolent (defining "insolent" as "audaciously rude or disrespectful; impertinent or impudent") (last visited Mar. 1, 2024); *Insolent*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/insolent (defining "insolent" as "insultingly contemptuous in speech or conduct" and "exhibiting boldness or effrontery") (last visited Mar. 1, 2024).

The question of whether the measure Heffner took "inflicted unnecessary and wanton pain and suffering" turns ultimately "on whether [the] force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).[3] This core judicial inquiry has a subjective component and an objective component:

---

[3] Serrano asserts that the constitutionality of each Defendant's conduct—including Heffner's—is controlled by the deliberate-indifference standard in *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). *See* Doc. 32 at 3. The Supreme Court says, however, that application of the deliberate-indifference standard to force used in a prison setting "is inappropriate." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). The *Whitley* standard controls. *Hudson*, 503 U.S. at 6.

"the official must have . . . 'acted with a sufficiently culpable state of mind' . . . , and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Sconiers*, 946 F.3d at 1265 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Courts use primarily five factors to evaluate the subjective element: "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat 'reasonably perceived by the responsible officials,' . . . [4] 'any efforts made to temper the severity of a forceful response,'" and "[5] [t]he absence of serious injury." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321). This evaluation "give[s] a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (quotation marks omitted).

Under the objective element, the use of force must be "harmful enough" or "sufficiently serious." *DeJesus*, 14 F.4th at 1195 (citing *Sconiers*, 946 F.3d at 1265). That is because the Eighth Amendment does not preclude *de minimis* uses of force. *DeJesus*, 14 F.4th at 1195 (citing *Sconiers*, 946 F.3d at 1265-66); *see also Sconiers*, 946 F.3d at 1265 ("Not

every malevolent touch by a prison guard gives rise to a federal cause of action." (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010))); *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) ("[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity."). "[T]he extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been thought necessary.'" *Sconiers*, 946 F.3d at 1266 (quoting *Wilkins*, 559 U.S. at 37).

Serrano has cited no case from the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida that gave Heffner fair warning that his action was unconstitutional, nor has the undersigned's research revealed such a case. On the objective component, it would not be clear to a reasonable officer that kissing Serrano was more than a "*de minimis* use[ ] of physical force.*" *Hudson*, 503 U.S. at 9-10. The type of force allegedly used by Heffner—an unwanted touch that did not involve the genitalia of Heffner or Serrano—was not "of a sort repugnant to the conscience of mankind." *Id.* at 10 (quotation marks omitted). Instead, it was materially similar to the "push or shove" referenced in *Wilkins v. Gaddy*, which "almost certainly fails to state a valid excessive force

claim." 559 U.S. at 38.[4] Second, Serrano does not allege that the force caused any physical discomfort or injury. *See, e.g., Burke v. Bowns*, 653 F. App'x 683, 697-98 (11th Cir. 2016) (officer's force after prisoner sneezed on him—including slamming handcuffed and leg-ironed prisoner to the ground face first and pinning him with an "arm bar" hold, causing minor swelling and redness to prisoner's face and tenderness to his neck—was no more than a *de minimis* use of force).

Moreover, even *if* a reasonable officer would have known that the force Heffner used was not *de minimis*, Heffner still is entitled to qualified immunity. Serrano has cited no case with even remotely similar facts from the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida that might have given Heffner fair warning that his response to Serrano's insolence was unconstitutional. To the contrary, any reasonable officer would have believed that some amount of force was permissible to restore discipline in response to a prisoner's brazen,

---

[4] To the extent Serrano characterizes the touch as "sexual," neither *DeJesus*, nor *Sconiers*—both of which involved an officer forcefully penetrating the prisoner's anus with his finger—put Heffner on notice that kissing Serrano was a "sexual assault," or was "sufficiently serious" to violate the Eighth Amendment.

belittling conduct. *See, e.g., Williams v. Radford*, 64 F.4th 1185, 1197 (11th Cir. 2023) (a need for an application of force was established by the fact that the prisoner "engaged in a verbal altercation" with an officer; "Our cases recognize that prison officials may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."); *Bennett v. Parker*, 898 F.2d 1530, 1533-34 (11th Cir. 1990), *abrogated on other grounds by Wilkins*, 559 U.S. at 38-39 (the need for the use of force—in that case a prison official's grabbing a prisoner by the throat and shoving him against prison bars—was established by the undisputed fact that the prisoner was insubordinate and disruptive); *Burke*, 653 F. App'x at 698 (officer's slamming fully restrained prisoner to the ground in response to being struck by prisoner's bodily fluid from sneeze—which officer believed to be spit—was good-faith effort to restore discipline and was not malicious and sadistic because the amount of force was minimal and appropriately calibrated to the threat posed by the prisoner; "[I]t is difficult to conceive of less severe force that [the officer] could have used in the circumstances.").

Additionally, this case is not an obvious one where Heffner's conduct was "so far beyond the hazy border between excessive and acceptable force that [Heffner] had to know he was violating the Constitution even without case law on point." *Willingham v. Loughnan*, 321 F.3d 1299, 1303 (11th Cir. 2003); *see also Hope*, 536 U.S. at 738 (finding constitutional violation "obvious" where safety and discipline concerns had long abated by the time prisoner was handcuffed to a hitching post and "subjected . . . to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7–hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation.").

For all of the reasons set forth above, Heffner is entitled to qualified immunity. Thus, Serrano's claims against Heffner must be dismissed.

### 3.   *Simpson is Entitled to Qualified Immunity*

Serrano claims that Simpson violated the Eighth Amendment "when Officer Simpson grab[bed] me by the arm and pin[ned] me to the wall without need or provocation by Plaintiff just so Captain Heffner

could sexually assault me." Doc. 7 at 10 ¶ 2. Simpson asserts that Serrano's allegations fail to state a plausible claim for violation of the Eighth Amendment, and even if Serrano stated a constitutional violation, the law underlying the alleged constitutional violation was not clearly established. Doc. 28 at 13-15, 28-32.

### (a).   Lack of Clear Establishment

Serrano claims that Simpson violated the Eighth Amendment by aiding Heffner in sexually assaulting Serrano. Doc. 7 at 10 ¶ 2. This claims fails for the reason discussed above—the law did not clearly establish that Heffner's kiss was a sexual assault for Eighth-Amendment purposes. *See* Discussion *supra* Section III.A.2.a. Simpson, therefore, is entitled to qualified immunity on this aspect of Serrano's claim.

### (b).   Lack of Clear Establishment Regarding Excessive Force

Serrano fares no better even if his claim is construed as an excessive-force claim. Serrano alleges that in response to Serrano and Heffner's heated face-off, Simpson grasped Serrano's arm, moved him back against the wall, and "had [Serrano] by the arm pin[ned] to the wall." Doc. 7 at 7 ¶¶ 8-9. Taking Serrano's allegations as true, they do

not plausibly show that Simpson's act of moving Serrano back while maintaining a custodial hold on his arm—which itself was *de minimis* force—was applied "maliciously and sadistically for the very purpose of causing harm" instead of "in a good faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320-21.

And even if the District Court were to determine that Serrano's allegations stated a plausible claim that Simpson violated the Eighth Amendment, Simpson is entitled to qualified immunity, because the law underlying the alleged constitutional violation was not clearly established at the time of Simpson's conduct. In other words, not every reasonable officer facing the same circumstances as Simpson would have known that under the clearly established law of this Circuit, Simpson's response to Serrano and Heffner's face-off constituted excessive force.

Because Serrano's amended complaint fails to allege the violation of a clearly established constitutional right, Simpson is entitled to qualified immunity. Serrano's claim against Simpson, therefore, must be dismissed.

4.     *Dickens and Peters Are Entitled to Qualified Immunity*

Serrano claims that Dickens and Peters violated the Eighth Amendment "by just standing there and not intervening to prevent the sexual assault before[e] it happened." Doc. 7 at 10 ¶ 3. Dickens and Peters assert that Serrano's allegations fail to state a claim for violation of the Eighth Amendment, and that even if Serrano stated a constitutional violation, the law underlying that alleged violation was not clearly established. Doc. 28 at 13-15, 28-32.

To hold Dickens and Peters liable for failing to intervene, Serrano must show that they were "(1) in a position to intervene in an ongoing constitutional violation and (2) failed to do so." *Williams*, 64 F.4th at 1199 (citing *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000)); *see also Crenshaw v. Lister*, 556 F.3d 1283, 1293-1294 (11th Cir. 2009) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.").

Dickens and Peters are entitled to qualified immunity because, as discussed above, the law was not clearly established in July 2022, that Heffner's conduct violated the Constitution. Thus, not every reasonable

Page 22 of 33

officer in their position would have known that they were required to intervene. *Cf. Butler v. Sec'y, Fla. Dep't of Corr.*, No. 20-11097, 2021 WL 4279555, at *4 n.4 (11th Cir. Sept. 21, 2021) (prisoner could not maintain a failure-to-intervene claim against officer because there was no underlying constitutional violation).

Because Dickens and Peters are entitled to qualified immunity, Serrano's claims against them must be dismissed.

## B.   <u>The Claim Against Santiago</u>

The only remaining claim is Serrano's Eighth-Amendment claim that Assistant Warden Santiago was deliberately indifferent to his safety in violation of the Eighth Amendment when she released Serrano from administrative confinement to open population on August 30, 2022, knowing that Heffner was the officer-in-charge. Doc. 7 at 10 ¶ 4. Santiago moves to dismiss this claim for various reasons, one of which is that Serrano failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Doc. 28 at 4-13.

### 1.   *The PLRA's Exhaustion Requirement*

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 90 (internal quotation marks and citation omitted).

"To determine 'proper exhaustion' in prisoner civil rights actions, courts must look to the requirements of the 'prison grievance system.'" *Gipson v. Renninger*, 750 F. App'x 948, 951 (11th Cir. 2018) (quoting *Woodford*, 548 U.S. at 95). In other words, "[a] prisoner must comply with rules 'defined not by the PLRA, but by the prison grievance process

itself.'" *Gipson*, 750 F. App'x at 951 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001); *see also Porter*, 534 U.S. at 524-25. Thus, "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88.

The FDC's administrative remedy program requires an inmate to begin the grievance process by submitting an informal grievance to the designated staff member. Fla. Admin. Code r. 33-103.005. If the inmate is dissatisfied with the response, he may submit a formal grievance to the Warden's office. Fla. Admin. Code rr. 33-103.006, 33-103.015(5). If the inmate is dissatisfied with the response to his formal grievance, he may file an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). Fla. Admin. Code rr. 33-103.007(1), 33-103.011, 33-103.015(5); *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

### 2.   *The Framework for Evaluating an Exhaustion Defense*

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *Jones*, 549 U.S. at 216; *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts must follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the PLRA.

The defense of failure to exhaust should be treated as a matter in abatement. *Id.* at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner*, 541 F.3d at 1082 (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (internal quotation marks and citation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in

Page 26 of 33

the plaintiff's response. *See id*. at 1082.  If they conflict, the court accepts the plaintiff's version of the facts as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. at 1082; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step—where the plaintiff's allegations are assumed to be true—"the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies. *See, e.g., Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." (citing *Bryant*, 530 F.3d at 1376)).

### 3.    *Application of the Turner Procedure*

The factual allegations in Defendants' motion to dismiss conflict with those in Serrano's response with regard to exhaustion. Defendants allege that Serrano "failed to grieve any actions by Defendant Santiago." Doc. 28 at 12.

Serrano's original response to the motion to dismiss addresses only the steps Serrano took to exhaust his "sexual abuse" allegation against Heffner for the incident on July 28, 2022. Doc. 32 & Attach. Serrano's supplemental response to the motion to dismiss identifies Formal Grievance Log #2209-102-093 as the grievance that exhausted his claim that Santiago was deliberately indifferent to his safety by releasing him from administrative confinement to open population on August 30, 2022. *See* Doc. 33-1 (Serrano Decl. ¶ 7). Serrano does not identify any other formal grievance and subsequent appeal that complained of Santiago's releasing him to open population. *See* Docs. 32, 33.

Taking Serrano's allegation at face value (that is, without reviewing the actual grievances) and assuming Serrano's allegation is true, Santiago is not entitled to have the claim against her dismissed for failure to exhaust administrative remedies. Thus, the undersigned moves

to the second step of the *Turner* framework and resolves factual conflicts relating to exhaustion.

Defendants have produced a copy of Formal Grievance Log #2209-102-093 and Serrano's appeal from that grievance—Appeal Log #22-6-30130. *See* Doc. 28-6. In Formal Grievance Log #2209-102-093—filed on September 19, 2022—Serrano made no mention of Santiago releasing him to open population on August 30, 2022. Doc. 28-6 at 4. Instead, Serrano complained that he filed an informal grievance on August 5, 2022 against Captain Heffner "concerning the PREA allegation," and that he did not receive a response. *Id.* at 4. Formal Grievance Log #2209-102-093 was denied with a lengthy explanation of how Serrano's various grievances against Heffner had been processed. *Id.* at 3.

Similarly, Serrano's appeal from Formal Grievance Log #2209-102-093 did not grieve Santiago's August 30, 2022 release of Serrano to open population. Serrano's appeal—Appeal Log #22-6-30130—disagreed with the response to Formal Grievance Log #2209-102-093 concerning the processing of an August 5, 2022 informal grievance against Heffner. Doc. 28-6 at 2. Serrano's appeal was denied by Secretary's Representative C. Neel as follows:

> Your administrative appeal has been reviewed and evaluated. The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.
>
> Your administrative appeal is denied.

Doc. 28-6 at 1. Because Formal Grievance Log #2209-102-093 and Appeal Log #22-6-30130 did not concern Santiago's releasing Serrano to open population on August 30, 2022, those grievances do not satisfy § 1997e(a)'s exhaustion requirement as to Santiago.

That said, it appears from the grievance records Defendants produced that Serrano raised his allegation concerning being released to open population in an appeal to the Office of the Secretary on September 14, 2022, although Serrano did not identify Santiago by name. *See* Doc. 28-4 at 2 (Appeal Log #22-6-27470). That appeal, however, was returned without action because it did not comply with the FDC's administrative remedy program:

> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your grievance at the appropriate level at the institution. You have not done so, or you have not provided this office with a copy of that grievance, nor have you provided a valid or acceptable reason for not following the rules.

>Furthermore, if you fear staff, you need to file an informal to the Colonel. The Colonel should have the opportunity to address these issues regarding staff at the institution.
>
>Upon receive of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.
>
>Based on the foregoing information, your grievance is returned without action.

Doc. 28-4 at 1. The response was signed on September 16, 2022, and a copy was mailed to Serrano on September 21, 2022. *Id*.

Serrano does not allege that after September 21, 2022, he resubmitted the required grievance and appeal—within the FDC's allowed timeframes—concerning Santiago's releasing him to open population on August 30, 2022. *See* Docs. 32, 33. Serrano's declarations do not identify a resubmitted grievance and appeal. *Id*. The grievance records provided by Defendants contain no resubmitted grievance or appeal. *See* Doc. 28 & Attach. The log of Serrano's formal grievances reflects no resubmitted grievance concerning Serrano's release to open population. Doc. 28-9 (Formal Grievance Log). The undersigned finds that after Appeal Log #22-6-27470 was returned without action, Serrano

did not resubmit the required grievance and appeal concerning Santiago's releasing him to open population on August 30, 2022.

Because Santiago has met her burden of establishing that Serrano failed to properly exhaust his administrative remedies with respect to the deliberate-indifference claim against her, Serrano's claim against Santiago must be dismissed.

## IV. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     Defendants' motion to dismiss, Doc. 28, be **GRANTED**.

2.     Plaintiff's claims against Defendants Heffner, Simpson, Dickens and Peters be **DISMISSED** because these Defendants are entitled to qualified immunity.

3.     Plaintiff's claim against Defendant Santiago be **DISMISSED** because Plaintiff failed to exhaust his administrative remedies as required  by 42 U.S.C. § 1997e(a).

4.     The clerk be directed to enter judgment accordingly and close this case file.

At Panama City, Florida, this 1st day of March, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation.** Any different deadline that may appear on the electronic docket is for the court's internal use only. **A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**